**Sharon PRISCO, Appellant,**

v.

**Richard L. STROUP, Appellee.**

No. 05–FM–1086.

District of Columbia Court of Appeals.

Argued Sept. 13, 2006.

Decided May 8, 2008.

James G. Nolan, with whom Rebecca L. Bixler, Chevy Chase, MD, was on the brief, for appellant.

Margaret J. McKinney, Bethesda, MD, with whom Kristin Henrikson, Daniel A. Lewis, and Wendy H. Schwartz, were on the brief, for appellee.

Before RUIZ and KRAMER, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate Judge:

Appellant appeals the trial court's denial of her motion to increase child support and request for attorney's fees. She challenges the trial court's finding that neither appellee's change in income nor alleged changes in the children's needs merit an increase in child support, as well as the trial court's exclusion of a booklet prepared by appellant which she claims contained the documentary foundation for the expenses set forth on her financial statement. We affirm the judgment of the trial court denying appellant's request for modification of child support and for attorney's fees. We also deny appellee's request for attorney's fees under our Rule 38.[1]

**Factual Summary**

Appellant and appellee reached a Property and Support Settlement Agreement ("Agreement") on December 28, 2000, which finalized their divorce proceedings in the Circuit Court of Fairfax County, Virginia ("Fairfax Court"). The Agreement, which was incorporated, but not merged, into the divorce decree, addressed spousal and child support, and provided for the proportionate sharing of certain expenses, such as school tuition and unreimbursed medical expenses of their three children, who at the time ranged from five to ten years of age.

In August 2004, the Fairfax Court increased appellee's monthly child support obligation to $4,211,[2] a $500 upward deviation from the presumptive amount under the statutory guidelines applicable in Virginia. That same month, appellant filed a complaint in Superior Court to register the Fairfax Court's order in the District on the ground that neither the parties nor the children lived in Virginia (appellant and the children had moved to Maryland and appellee to the District of Columbia), *see* D.C.Code § 46–306.09 (2001), and to request a modification (increase) of the Virginia support order. In November of 2004, the trial court registered the Fairfax Court's order, but denied appellant's motion to modify it because the D.C. guidelines' presumptions based on income (unlike those in Virginia) do not apply to income in excess of $75,000 and the relocation of the parties by itself did not warrant a modification.

This appeal stems from the denial of appellant's February 2005 motion seeking an increase in child support payments, as well as in appellee's proportionate share of the children's tuition, nanny and unreimbursed medical expenses. Appellant contended that an upward modification was warranted because her income had substantially decreased, whereas appellee's had substantially increased, and there had been a substantial change in the children's needs. Appellant submitted a financial statement dated June 2005, in which she

---

1. Appellee has informed the court that the parties have continued to dispute the amount of child support pursuant to appellant's subsequent motions for modification. The pendency of this appeal does not deprive the trial court of jurisdiction to consider motions based on new evidence and changed circumstances, so long as it does not alter the judgment that is the subject of the appeal. *See Sampson v. Johnson,* 846 A.2d 278, 279 n. 1 (D.C.2004) ("The pendency of the father's appeal ... did not undermine the trial court's authority to entertain ... the father's motion to modify custody and visitation ... for, ... [it was] based on a material change of circumstances." (citing *Stebbins v. Stebbins,* 673 A.2d 184, 190 (D.C.1996))).

2. The 2000 Agreement had provided for child support in the amount of $2,735 per month, based on appellant's then-annual income of $114,000 and appellee's then-annual income of $575,000.

lists monthly expenses for the children of $27,986, an increase of $3,381 per month from the amount she had claimed a year earlier, in seeking an increase from the Fairfax Court. The trial court considered the financial statement but excluded, as a discovery sanction, appellant's proposed exhibit with additional documentation to substantiate the expenses. The trial judge denied the requested modification, finding that there had not been a substantial change in the children's needs after the Fairfax Court's order and that appellee's increase in income of "about 14%" was not so substantial as to warrant an increase in child support in light of the other significant child-related expenses that he currently incurs in addition to child support. The trial judge also denied both parties' request for attorney's fees.

### Analysis[3]

1. *Child Support Modification*

■■■ The statute provides that once a foreign court's child support order is registered in the District, the trial court has authority to modify the registered order, "subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of the District." D.C.Code § 46–306.11(b) (2001). The standard for seeking a modification is set out in the statute:

> Any order requiring payment of an amount of child support, regardless of whether the amount of the child support was the subject of a voluntary agreement of the parties, *may* be modified upon a showing that there has been a *substantial and material change in the needs of the child or the ability of the responsible relative to pay* since the day on which the order was issued.

D.C.Code § 46–204(a) (2001) (emphasis added). "Whether there has been a substantial and material change in circumstances is a question committed to the sound discretion of the trial court, and its decision in the matter will not be reversed on appeal without a clear showing of abuse of discretion." *Burnette v. Void,* 509 A.2d 606, 608 (D.C.1986).

Appellant challenges the trial court's determination that appellee's ability to pay did not warrant an increase in child support. She argues that the $129,838 increase in appellee's income from 2003 ($911,606) to 2004 ($1,041,444) should result in a corresponding adjustment of appellee's child support payment because it represents a "substantial and material" change in appellee's ability to pay.

The trial court took into account the 14% increase in appellee's income, but considered that it "alone is not a substantial and material change warranting a modification," when viewed in the context of all the child-related expenses appellee incurs in addition to child support, particularly where the children's needs—and more—are being met. Specifically, the trial court noted that in addition to annual child support payments of $50,532, appellee paid $59,892 in private school tuition (with a 6.5% tuition increase anticipated for the 2005 school year); $22,356 for a full-time nanny used by both parties (with an additional $30 weekly increase); and over $9,000 for the children's unreimbursed health care expenses.

Appellant asserts that in *Graham v. Graham,* 597 A.2d 355 (D.C.1991) (per curiam), this court deemed a $45,000 increase in annual compensation to be a substantial and material change in the ability to pay child support and a sufficient basis to modify a child support order. The facts in

---

**3.** Appellant raises a number of challenges on appeal. We discuss the more salient ones in this opinion. We have considered all her other points and find none persuasive.

*Graham,* however, were significantly different from the ones here. Mr. Graham's $45,000 increase from 1982 to 1984, was part of several increases amounting to 155% under a five-year contract (from $100,000 in 1981 to $255,000 in 1985). *See Graham,* 597 A.2d at 356. Here, on the other hand, although appellee's compensation increased 14% from 2003 to 2004, there was no guarantee that a similar pattern would obtain over the next years.

Moreover, we did not hold in *Graham* that the father's salary increase constituted a material change in his ability to pay child support that required an automatic adjustment of child support. Rather, the case was remanded for the trial court to make a factual determination whether such increases were a "substantial and material" change in Mr. Graham's "ability ... to pay." D.C.Code § 46–204(a); *see Graham,* 597 A.2d at 359. Based on a consideration of all the child-related expenses appellee was already paying (and which were about to increase as a result of higher tuition and other payments) the trial court in this case determined that appellee's ability to pay did not materially change from 2003 to 2004, a determination we will not disturb absent an abuse of discretion. *See Burnette,* 509 A.2d at 608.[4]

The court's primary concern in *Graham* was to compare the standard of living of the children with that of the noncustodial parent. *See Graham,* 597 A.2d at 358 ("We think it appropriate that a trial court may act to ensure that where there is a material increase in non-custodial parents' financial resources, that these parents do not increase their own standard of living without also ensuring that their children live as well as they." (citing child support guidelines, now codified at D.C.Code § 16–916.01(a)(3) (2001))). Here, the record supports that the children kept the lifestyle that they used to enjoy before their parents' divorce, thanks, in great measure, to appellee. The children enjoy the luxuries of the parents' million-dollar homes; meals out in restaurants; luxurious vacations; clothing; athletic activities; and sporting equipment. Appellee, for example, has given the children thousand-dollar golf clubs and, during 2004, had taken them on vacations to Costa Rica, Alaska and Williamsburg, Virginia. All these "extras" are in addition to appellee's child support and other payments, and the trial court took them into consideration in denying appellant's request to modify appellee's child support obligation.

This case is unlike *Nevarez v. Nevarez,* 626 A.2d 867 (D.C.1993), where the non-custodial parent's increase in compensation triggered the statutory "presumption that there has been a substantial or material change of circumstances that warrants a modification of a child support order if application of the guideline to the current circumstances of the parties results in an amount of child support that varies from the amount of the existing child support order by 15% or more." *Id.* at 871 (quot-

---

4. Appellant also argues that the trial judge erred in finding that the repayment of $12,000 in alimony that appellee received in 2004 did not constitute income for purposes of calculating child support. We see no reason to disturb the trial judge's ultimate conclusion that no modification was warranted on this ground because, even if the repayment of alimony were considered income to appellee, that relatively small additional amount would not have made a difference in the trial judge's consideration if the more significant increase in compensation from his law firm ($129,838) did not, in the judge's estimation, constitute a substantial and material change in appellee's ability to pay child support. Moreover, appellant is poorly positioned to make this claim as she does not contest that the repayment of alimony was to some extent due to her failure to report her own higher income the previous year.

ing D.C.Code § 16–916.1(*o*)(3) (1992)). As noted, the income level in this case is not covered by the D.C. guideline, *see* D.C.Code § 16–916.01(f),[5] which leaves the trial judge with greater discretion to set an amount of child support that takes into account the entire picture. Moreover, unlike in *Nevarez*, where the trial judge found that the noncustodial father had "accorded very low priority to his child support responsibilities, and had elected instead to accommodate his own personal desires and purported needs," *id.* at 869, here the trial judge found the contrary, that appellant fully provided for his children's needs—and more.

■ The trial judge also considered the decrease in the income received by appellant, who is a lawyer, but determined that it did not warrant an increase in appellee's child support payments, because appellant voluntarily chose to quit her position with Sidley Austin Brown & Wood. Appellant challenges this determination on appeal, arguing that her departure from the law firm was prompted by the pressures that the position entailed, and therefore, was not voluntary. She testified that the long hours interfered with her obligations towards the children and that the stress of the litigation practice caused her health to deteriorate, worsening her irritable bowel syndrome. Appellant also testified, however, that she was displeased with the compensation she received from the firm, and that when it refused to meet her demands for an increase in salary, she made

the decision to quit her job shortly before the trial in this case. Thus, on this record, there was evidence from which the trial court could find that appellant's unemployment was voluntary. *See Mizrachi v. Mizrachi*, 683 A.2d 137, 138 (D.C.1996). Furthermore, appellant testified that, as of the date of trial she had already obtained an employment offer with an estimated annual salary of $93,000. In view of the record support that appellant's unemployment was voluntary and short-lived, the trial court did not abuse its discretion in concluding that her temporary decrease in income did not warrant an increase in appellee's child support obligation.

Appellant also challenges the trial judge's finding that her children's needs did not substantially and materially change "since the day on which the [Fairfax Court's] order was issued." D.C.Code § 46–204(a). She asserts that renovations made to the home that she now shares with her new husband, and tennis and golf expenses for the children required the trial judge to allocate a percentage of those expenses to appellee. Related to the first category, home renovations, appellant presented at trial an itemized list that includes: a new roof; new pool and pool patio; new hardwood floors; new fencing for the pool and property; landscaping; new windows; anti-glare film on the rear windows; new well-water tank; exterior and interior house painting; new wallpaper; new draperies and blinds; new washer and dryer; new dishwasher; and an

---

5. The guideline statute provided at the time that:

> The guideline percentage shall not apply presumptively to a noncustodial parent with income that exceeds $75,000. The amount available to a child of a noncustodial parent with income above $75,000 shall not be less than the amount that would have been ordered if the guideline had been applied to a noncustodial parent with income of $75,000.

D.C.Code § 16–916.01(f) (2001). Here, appellee was paying approximately four times as much as the top calculation for three children under the guideline. The guideline was amended in 2006 to raise the income amount subject to the presumptive guideline to $240,000. *See* D.C.Code § 16–916.01(h) (2007 Supp.).

automatic garage door.[6] But these expenses, as the trial court noted, were incurred or contracted for prior to the Fairfax Court's order, and therefore, could not constitute a "change" in circumstances "since" then. *Id.* (referring to "a substantial and material change in the needs of the child ... since the day on which the order was issued"). Moreover, the trial judge was not convinced that the improvements were "primarily for the benefit of the children." We find no reason in the record to deviate from either judgment, and additionally note that the improvements to the home, even if they incidentally benefitted the children, are a capital investment that will increase the value of appellant's and appellant's husband's interests in their real estate—one in which appellee has no ownership interest.

Regarding the second category of expenses appellant claims, tennis and golf lessons, appellant argues that they have increased substantially since the previous modification by the Fairfax Court. Appellant contends that she presented unrebutted testimony of such increases. The trial judge found no evidence of a change, however, and the hearing record of the June 2004 proceedings before the Fairfax Court supports that the golf and tennis expenses that appellant claims were incurred starting in the Fall of 2004, were already addressed at the 2004 hearing and reflected in the increased support order that followed.[7] On this record, there is no basis to overturn the trial court's finding that appellant did not demonstrate a substantial and material "change" in the children's needs since the 2004 order. *Id.*

In the alternative, appellant contends that she did not have to prove that there was a material and substantial change in the children's needs or in appellee's ability to pay because the Agreement provides that they are to "recalculate child support" after an annual exchange of their respective income for the previous year. The Agreement also provides that, in the event they cannot agree, the matter should "be submitted to a court of competent jurisdiction." The record does not reflect that appellant raised this argument in the trial court. In any event, we see no merit in the argument, as the Agreement provides—in line with the statute—that the periodic adjustments "shall be made upon a showing of a material change of circumstances or such other appropriate legal or equitable standards in accordance with the laws of the Commonwealth of Virginia."[8] Thus, for the same reasons that the trial court denied a modification under the statute, it likely would have refused to recalculate child support under the Agreement. Based on the trial court's reasonable application of the appropriate factors, we perceive no abuse of discretion in the trial judge's order denying appellant's request to modify the child support order.

2. *Discovery Sanctions and Exclusion of Evidence*

 The District of Columbia Superior Court has the authority to impose dis-

---

**6.** Appellant totaled these home renovations costs and then apportioned three fifths to the three children. She also amortized the cost of such expenses by dividing them into the number of years the items were expected to be usable. From this calculation, she determined monthly payments.

**7.** The golf and tennis lessons, to which appellant also testified in the 2004 Fairfax Court hearing, were the primary reasons for the

$500 increase in monthly child support. Appellant's claim that the older child (then fifteen years old) needed a car was dismissed by the trial court because appellant had not discussed the issue with appellee in advance and there was no evidence that a car had, in fact, been purchased.

**8.** Appellant has not argued that the Virginia child support guidelines should be applied.

covery sanctions—including exclusion of evidence—for failure to comply with discovery orders and rules. *See* Super. Ct. Dom. Rel. R. 37(c). We review the trial court's exercise of that authority, including the severity of the penalty in light of the circumstances, for abuse of discretion. *See Haqq v. Dancy–Bey*, 715 A.2d 911, 913 (D.C.1998).

Appellant challenges the trial court's exclusion of her Exhibit 13—a booklet she prepared with the documentary foundation for the expenses set forth on her financial statements. The trial court barred the introduction of the booklet as a form of discovery sanction because appellant redacted certain documents in the booklet. We have established that the following factors are relevant in deciding whether to exclude evidence as a sanction:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the [evidence] failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed [evidence] on the orderliness and efficiency of the trial [or hearing]; and

(5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Weiner v. Kneller*, 557 A.2d 1306, 1311–12 (D.C.1989).

Appellant argues that the trial court abused its discretion when it excluded her Exhibit 13, which she produced in response to appellee's discovery request, and which related to the increased children's expenses that form the basis of her request for a modification in child support. But appellant overlooks that the trial court's action was a result of her own conduct during discovery. Although she presented the booklet of expenses in response to appellee's request, the document was redacted without informing appellee of the reasons for the redactions. Appellant asserts that the redacted portions correspond to her husband's expenses and are, therefore, irrelevant to the child support proceedings. Nevertheless, the Superior Court Rules impose a duty to inform the other party about the reasons for any objections made to a request for production. *See* Super. Ct. Dom. Rel. R. 34(b) (a party objecting to a specific item requested during discovery must state the portions covered by the objection and the reasons for the objection). As the trial judge ruled, appellee "legally has a right to have these things produced or agree that they [are] not to be produced, but not be forced to go to trial on documents that are redacted." Thus, the trial judge relied on the first factor of *Weiner*, that is, the surprise or prejudice that the incomplete evidence would have caused to appellee, had it been admitted. Moreover, appellant does not contend that Exhibit 13 (which is not part of the record) contains evidence that would have made a difference to the trial court. Appellant testified about the expenses and otherwise introduced documentary evidence of the increased expenses she claimed. The denial of appellant's request for modification was not based on the trial court's disbelief that they had been incurred, but rather on their timing (prior to the Fairfax Court's order) and appellee's overall expenses related to the children. Consequently, we find no abuse of discretion in the trial judge's decision to exclude Exhibit 13.[9]

9. Appellant filed a Motion to Supplement the

Record, to add a letter that her attorney sent

### 3. Attorney's Fees

 Trial court decisions involving attorney's fees are "firmly committed to [its] informed discretion...." *King v. King,* 579 A.2d 659, 663 (D.C.1990) (quoting *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986)). Therefore, appellant must make a "very strong showing of abuse of discretion." *Steadman,* 514 A.2d at 1200.

Appellant contends that the trial judge erred in denying her request for attorney's fees because she is entitled to fees under the terms of their Agreement. This argument is made for the first time on appeal. Even assuming that we were inclined to address it, it has no merit. The Agreement provides that "the prevailing party shall be entitled to reasonable attorney's fees and costs." As appellant did not prevail in the trial court—nor in this appeal—her claim is not covered by the Agreement.

Appellee did not file a cross-appeal challenging the trial court's denial of his request for attorney's fees, under the Agreement, as a "prevailing party." As he has abandoned the argument that he is entitled to attorney's fees under the Agreement, we do not address the issue. Appellee, in his brief, requests attorney's fees, not based on the Agreement, but on Rule 38 of this court, as well as costs under Rule 39.[10] Attorney's fees are awarded under Rule 38 as a "sanction" for improper behavior. D.C.App. R. 38. Appellee's

passing (one sentence) request in the brief, however, does not address the standard for awarding attorney's fees under Rule 38—"an appeal ... that is frivolous or interposed for an improper purpose, such as to harass or to cause unnecessary delay...." *Id.*; *see Slater v. Biehl,* 793 A.2d 1268, 1278 (D.C.2002) ("A frivolous appeal has variously been described by this court as one that is 'wholly lacking in substance,'... an appeal not 'based upon even a faint hope of success on the legal merits ....'" (citations omitted)). Although some of appellee's arguments opposing appellant's request for modification imply that appellant is overreaching, and has not proceeded in accordance with their Agreement, he has not, in making his request for fees, attempted to meet the high standard of Rule 38.

For these reasons we deny each party's request for attorney's fees.

The judgment of the trial court is

*Affirmed.*

---

to appellee's attorney and which allegedly shows that she did not "late serve" documents during discovery. Nevertheless, "[a]ny effort to 'supplement' the record ... would have to be rejected, since it was never before the trial court in the first place and thus cannot qualify for inclusion in the record on appeal." *Moorehead v. District of Columbia,* 747 A.2d 138, 145 n. 12 (D.C.2000). Furthermore, as explained above, the trial judge did not exclude appellant's exhibit because it was served late, rather, he excluded it because appellee's attorney had a right to inspect the

complete documents to ascertain their alleged irrelevance. Thus, allowing appellant to supplement the record with the letter, would be, in essence, futile.

**10.** With respect to the request for costs under Rule 39, we direct appellee to the requirement for filing with the clerk, "within 14 days from the entry of judgment, ... an itemized and verified bill of costs and fees, accompanied by proof of service." D.C.App. R. 39(d).